and may it please the court, James Kuhn on behalf of the plaintiff. This is another of those social security cases in which the administrative law judge failed to do what this circuit requires and what the social security administration's own rulings require in treating a treating doctor's opinion as to the claimant's ability to work. The doctor in this case is Dr. Fowley of the Fano Creek Clinic, who found on two separate occasions that the plaintiff was unable to work because of her. Could you speak up just a little bit? I will. Sorry. And if you need water, you're welcome to have it up there. I know we're all suffering from questions. Thank you, Judge. Dr. Fowley opined on two separate occasions that the plaintiff was unable to work because of her panic disorder, her anxiety and depression. The ALJ treated this opinion perfunctorily, said it was rejected, that he rejected it because, number one, it was inconsistent with other evidence, and number two, it was not supported by objective clinical findings. I'm having trouble hearing you, too, so could you just speak up a little? I will, yes. Could I sort of take you down the track a little on this? Say I were to agree with you that the ALJ's determination was insufficient under the governing law and the regulations, then we accept the opinion of the treating doctor, right? That's right. But if his opinion is a legal opinion that she can't work, the regulations say that that's not worthy of any weight. It would have to be an opinion that she would miss so many days of work, she would have – she, you know, couldn't do this. It would have to be the objective findings and symptoms, not just that she can't work. So what's left? And I've got all the doctor's – Dr. Fahley's records. If we're to – if I were to agree with you and say that we have to credit his opinion, what do we credit? Well, I guess I don't agree with the assertion that the regulations say a doctor's opinion that one cannot work is entitled to no weight. We did not argue that in the briefs, but as I recall the regulations, they say that an opinion that the plaintiff cannot work has to be treated as other opinions. There's language in some of those regulations that says this is a determination reserved to the commissioner, but there's also language that says the – that such an opinion must be dealt with. That is, specific and legitimate reasons must be given. I was interested in the same issue as well. We don't know what standard he was applying when he says she can't work. She can't work at her current job. She can't work – I mean, the standard under the Social Security Act is so stringent in terms of what we mean by she can't work that whether a doctor means the same thing is almost impossible to say. What do our cases say about that? About the question whether – What differences do a medical person's conclusion about whether somebody is disabled and cannot work as opposed to has this disease or that disease and it's severe? I believe that the cases treat an opinion as to whether someone can or cannot work the same way they treat an opinion as to whether someone has bipolar disorder or depression or anything else that looks more medical. The government will correct me, I'm sure, if there's a case that says, well, this is different when you're talking about the claimant's ability to work, that this kind of an opinion is different. Stewart, don't say that. I can't hear you. The cases do not distinguish between those two as far as I know. Not on the standard. They're not being cross-examined. And as I say, you don't know what they mean by that. If I was to say – if somebody was to say I can't work, the doctor was to say I can't work, me. Presumably, most likely, he would probably mean I can't do what I usually do. I can't be a judge. And somebody would have to ask him whether he meant that I can't be a file clerk either. Well, I think – I mean, a doctor doesn't live in a bubble. The doctor knows that when he or she says this person can't work, that means things like this person can't show up regularly, attend to whatever a job is on a regular basis. This was not – Miss Spotty's work history, she had various things that she had done. This is not a context in which you would infer that the doctor must have meant, well, she couldn't go back to being a specific thing, which is what she always did. His opinion would appear to be, in this context, a general opinion, that she cannot do what it takes to get up and go to work and show up and stay there all day every day. Do you think in this context, at least, it deals with her ability to be in the workforce? Right. And one needs to draw those inferences. That's true. But, you know, at the very least – and we're here on legal error, of course – the question is whether the judge has done what it takes to contend with that doctor's opinion, which I believe he has not. But in this context, I don't think it's fair to say that, well, this doctor may well have meant she couldn't go back to being a specific kind of worker, because her work history had been various. The law that I was talking about is actually in the regulations. It's 20 CFR 404.1527, subsection 8. It says, medical sources' opinions on issues reserved to the commissioner. Opinions on some issues, such as examples which follow, and includes a determination that she can't work, are not medical opinions, as described in paragraph A2 of this section, but are instead opinions on issues reserved to the commissioner, because they are administrative findings that are dispositive of the case. And so saying that she can't work really is not a medical opinion. And so I'm trying to get beyond – one step beyond that. What else in his opinion, or in the records where he writes something, would be medical information that would have to be credited and therefore entitled you to relief? I mean, there is other medical evidence that is – but it's his opinions as to what she's going through, what she's able to handle. She's having panic attacks. She's having anxiety, et cetera. I can't cite you the chapter and verse. It doesn't say that she's out of work so many days, or she can't go to work so many days. There's nothing like that, right? It doesn't say she would miss five days a month or something like that. That's right. Again, on the construction of the regulation, I believe the regulation, when it says reserved to the commissioner, I mean – It's not a conclusive determination, as I understand it. Doctors opine in all of these cases, whether or not – when we see them – whether or not, in their opinion, physically they – or mentally, they have limitations that in their medical opinion would make them unable to work. But that ultimate decision is the commission's. The ALJ can reject it and say, well, that's what you say, but I see that there are – on all the evidence, I see that there are circumstances where she is able to go to work. These problems are nighttime problems, whatever, and therefore I discredit the treating physician's findings. They aren't supported by objective medical findings or whatever, but – That's right. These – I mean – The ALJ just can't ignore the statement that in the doctor's medical opinion, this person is disabled from working. I mean, if the doctor says, look, I'm an expert in psychiatry, I'm a psychiatrist, and this person, if put in an office during the day has schizophrenic tendencies, she's going to go paranoid, she's going to do all these terrible things. In my opinion, she can't work. The ALJ can accept or reject that, but he can't ignore it. That's right. I mean, it's a continuum, of course, and at one end you have nothing – Coming back to this case, what she had was nighttime anxiety attacks, right? She had anxiety attacks more than just in the night. Primarily at night. She has a fear of being alone and all of that. She had some of that, but I would have to go back to the record to look and see whether that's where that predominance lies. But again, the ALJ might have been able to go into this record and figure out ways to explain why this doctor's opinion was not correct. If we agree with you, what would you have us do? Remand it with instructions to credit as true Dr. Falley's opinion. And just direct benefits or remand for fact-finding? No, that's – well, that would lead to a conclusion that benefits would be paid. Isn't there a timing problem? That is, Dr. Falley's ultimate opinion dealt with the time period well after her last insured date. That's right. So we'd be talking about Title 16 if the court is unwilling to infer that this is a condition that continues. I'm sorry? One could remand for payment of benefits on Title 16, but for further proceedings as to my information, what is the difference between the two? Is the difference the amount of money or what is the difference? Title 2 is disability benefits based on your work record. Right. I know that, but what's the practical difference? It depends on what your work record was. If you worked like the court might or someone else, your Title 2 benefits would be much higher than your Title 16. In other words, if you were a high-paid employee, you'd get more money that way. But if you had a very spotty work history, it might be that Title 16 would be higher. So you would get Title 2 up to this level and Title 16 would fill in the rest to something like $700 or $800 a month. I see. Thank you. Good morning, Your Honors. Good morning. May it please the Court. My name is Joanne D'Antonio with the Social Security Administration. The agency does not concede that specific legitimate reasons were not given. But I want to address some of the questions that the Court had regarding what do we do with this doctor's opinion. And I think that there is a gap in the case law and in the regulations on what we do with the ultimate opinion. Case law does tell us that for the ALJ, just to reject solely because it is the ultimate decision is not enough. But case law doesn't tell us particularly what to do with this if that is the only thing that the doctor says. So there is case law, as I thought there was, which essentially says that the doctor, which doesn't make the distinction that we were suggesting. I mean, it seems to say that the doctor's opinion as to whether the person is capable of any work is worth something. It's not worth nothing. Correct. It still has to be rejected for something other than the fact that it is simply conclusory and that it is the conclusory statement. If we were to think, if we were to hold that the reasons the ALJ gave were too conclusory and didn't go through and meet the standard of the regulations in the Ninth Circuit, then being left with the statement that she can't work, is she entitled to benefits? No. And the reason for that in this case is that what the court should do in this matter is remand for further proceedings for the court to explain why it would not be crediting as true the decision and the opinion of the physician. Not supported by the case law. Don't our cases say that if the ALJ screws it up and doesn't give sufficient basis to discredit the treating doctor, that we don't send it back and say, now do a better job so they can give more reasons? Beneke would suggest that. However, Beneke also states that it's only in the unusual case that we do that. And the cases that preceded that, Bunnell and Conant, say that we don't do that. We don't automatically remand for payment. The normal- What about the duty to supplement the record? I'm sorry. You have the duty to supplement the record by the ALJ. You have an opinion by the doctor that you can't work. And you've got some notes. Shouldn't the ALJ, if we remand it at a minimum, if we don't remand it for benefits, say, okay, doctor, why did you reach that? Give me the information, your medical observations and clinical observations that caused you to reach that opinion. Actually, I probably wouldn't go that far. The court could remand and direct the ALJ to develop the record. But I think that the record is completely developed as far, well, let me back up. The ALJ does not have to go back and recontact a doctor if his opinions aren't supported by any basis. In this case, Dr. Fowley's opinions are supported by absolutely nothing. There is nothing in the record to support his opinion. Except that he saw this woman over a period of time. And the ALJ acknowledges that. And was quite familiar with her situation. So it would, to say that it's not supported by anything is to say that his experience with this person isn't worth anything. As opposed to that he didn't explain himself very well and maybe needs to explain himself better. Well, that is correct. I mean, the ALJ did, when deciding that he wasn't to be given controlling weight, did look at the fact and acknowledge that this is a treating physician's opinion and he does have a treatment relationship. And not only that, it's a real treating physician. Sometimes one gets the impression that the treating physicians were sort of set up, you know, they saw them three times. But this seemed to be a real treating physician. Correct. And the ALJ acknowledges that. They do acknowledge that. But one of the reasons that you can reject, a specific and legitimate reason to reject a doctor's opinion is because it is not supported by clinical evidence. And that's in the Bayless case. Psychiatric. I mean, and it's very unclear what kind of evidence you would have other than a doctor's understanding of the person. You're not going to get clinical evidence in all likelihood. The other doctors didn't have it either. They did a bunch of tests that had to do with her intelligence and stuff. But in terms of her depression, it was ultimately a, it has to be based largely on self-reporting. And somebody who is her treating doctor is more likely to know whether her self-reporting is accurate or inaccurate because he sees her a bunch of times and has some understanding of her personality and perhaps her honesty. So I don't know what kind of evidence you would have in this kind of situation. The evidence is the clinical evidence and it is the testing that was done. The testing wasn't about her depression or her panic attacks. It was about her IQ. No, that's not all that was about her IQ. It was also about her ability to do work-related functions and how that depression and how that anxiety impacted that. The testing that was given was about her attention and concentration. And she seemed to be fully functional and had no impairment in attention and concentration. She had no impairment in her memory function. Right. She wasn't having a panic attack at the moment. But she doesn't have, the evidence doesn't suggest that she has panic attacks on her. Well, actually, the evidence is, the diagnoses that have been given by the examining psychologist is not that she's having panic attacks, that she has anxiety disorder that's not specifically a generalized anxiety disorder. It's not otherwise specified. So the testing that they give, which is not just an IQ test, also sees how she functions and how she functions during an eight-hour work day. I mean, she may have these anxiety reactions, but if we look at how she even functions in her daily activities, which they look at, she does what she needs to do. It doesn't incapacitate her. And Dr. Crossan indicated that there was no reasons why she couldn't go back to work. And this was after spending... But the IJ did not have anything to say about Dr. Crossan, and he was some time before anyway. I'm sorry, I didn't... The IJ, the ALJ did not rely on Dr. Crossan at all, as I recall. Well, he did not use that specifically to say, I reject Dr. Fowley because of Dr. Crossan. I don't even know if he mentioned Dr. Crossan. I'm sorry. I'm not sure he mentioned Dr. Crossan. He does. He mentions that on ER-16. He, in the center of the page, spans several lines going through what Dr. Crossan's observations were that her test performance were within normal limits. And he diagnosed her with dysthymia and anxiety disorder and recommended she participate in cognitive behavioral therapy. And then he goes on to talk about Dr. Fowley and the fact that she hadn't sought any treatment again until... Actually, didn't see any treatment from 1999 through 2001. So he does look at Dr. Crossan's evaluation. He also looks at... But at the point that he's analyzing it, he doesn't talk about Dr. Crossan. On ER-18 and so on, he talks about Dr. Fowley. Correct. He doesn't... And then he talks about Ms. Thompson and he talks about Dr. Freschetto and so on, but he never mentions Crossan again. Right. For a probably good reason, which is that he was in 1999. Well, and I don't know why he didn't. I will concede this is not the best-crafted ALJ decision that was ever written in time immemorial. He should have drawn the lines. He should have said. But what he's done is sufficient. It is specific. What he has given specific and legitimate reasons. He says, I'm not giving controlling weight to Dr. Fowley. It's not supported by acceptable clinical and laboratory studies and is inconsistent. Then he goes on to state, this is what I did look at. I looked at Dr. Freschetto's opinion that she has a global assessment of functioning, which is 60, which is mild to moderate impairment. And he says... Just to come back for a minute, Dr. Fowley does say that she has panic disorder and anxiety. Correct. Right. He calls it panic disorder. After 2002. I'm sorry? After 2002. Prior to that, her diagnosis had been anxiety disorder. Actually, that was in 2001. I'm sorry. But what difference does that make? Because... I don't know. I don't know either. I don't have an answer for that. Because apparently, for some of the benefits, it doesn't matter what it was. No. Basically, whether the diagnosis is it's anxiety disorder versus panic disorders, what are her functional limitations? And the specific and legitimate reasons that the ALJ gave were that the state agency psychologist looked at the record and his opinion that she was able to work with certain functional limitations, such as she was limited to simple work, shouldn't be in the context of the public and needs basically structure and no changes in her work so that she can avoid these anxiety attacks. He finds that that is consistent with the clinical record. The fact that a treating physician's opinion is... You can reject a treating doctor's opinion in favor of another opinion if the ALJ makes the findings that are specific and legitimate. And that's in Magdalena's case. And in this case, the specific and legitimate reasons are that he prefers the opinion and accepts the opinion of the state agency psychologist because it is consistent with the clinical record. The only thing that ALJ hasn't done is after he makes that statement, he doesn't say, therefore, I reject Dr. Fowley's opinion. But I think it's fairly implicit that if you accept the state agency, you've rejected the other opinions to the contrary. But isn't that... I mean, in the other cases where we reversed and sent it back, isn't that also the case also where they reject the treating physician and find that they rely on the examining physician or the medical records reviewer? Because otherwise, you'd have a situation where they reject the treating physician and they have nothing. So they always have something. And so if you say, well, the reason they objected the treating physician is because they had this other stuff that they relied on, that doesn't meet our test. And what he should have done is where he said, I rejected because it's not supported by the record and it's inconsistent. He should have said it's inconsistent with this one for this reason. Dr. Fowley says this. This one says this. This is supported. He should have gone down. There's a whole sort of list that they have to do. I don't think he has to go that far. But there's a huge difference between the factors in this case and the facts in the cases where they've reversed for payment of benefits. In those cases, particularly I think it's in the Reginator case that's relied on, the ALJ there rejected the specialist, the rheumatologist, about this woman's fibromyalgia and also rejected her statements about her fibromyalgia. So there really wasn't anything left to do. The specialist had said this woman basically is disabled. Her symptoms were consistent with that. And they said to go ahead and remand for payment. You're over time. Let me just say that when you say it's not a model, the problem is that we confront as judges, is we have to go back and forth between a treating physician and then all of the arguments. The ALJ is best positioned. It's fresh in his or her mind. And as Judge Moskowitz was suggesting, all he needed to do was go on and give some specific example. We have made that painfully clear, I think, in our jurisprudence. And it would save all of us a lot of time if instead of writing conclusory statements to say that they're well not, you know, that's all that's there. It's boilerplate language in the regulation. So perhaps the ALJ here would do a model one next time instead of forcing all of us to grade homework on the fly with trying to figure out what he probably meant or infer from code words what he meant. Okay, thank you for your argument. If you have anything you need to add, I don't think you do. All right, fine. Thank you very much. The case argued is submitted. Next case on calendar is Harris v. Morrow.
judges: Fisher, Berzon, Moskowitz